THE ELECTRIC STORAGE BATTERY Co., Appellee, v. THE
WATERLOO, CEDAR FALLS & NORTHERN RAILWAY Co.,
Appellant.

**Sales:** WRITTEN CONTRACT: MODIFICATION BY PAROL. A written contract to furnish and install certain storage batteries and other electrical equipment, which is complete in itself and unambiguous, and containing a warranty that the material shall be first class and of the latest type and that the work shall be done in first class and workmanlike manner, cannot be modified by parol proof of a different or further warranty, in the absence of a showing of fraud, accident or mistake.

**Same:** WARRANTIES: EVIDENCE. Evidence held insufficient to show that plaintiff warranted certain batteries and electrical appliances, which he contracted to install for defendant, to produce a certain power.

**Same:** BREACH OF WARRANTY. One who accepts and uses machinery for a considerable length of time without complaint, or reliance upon a warranty, until action is brought to recover the purchase price cannot then rely upon a breach of warranty to defeat recovery.

*Appeal from Blackhawk District Court.*— HON. FRANKLIN
C. PLATT, Judge.

WEDNESDAY, MAY 6, 1908.

ACTION to recover the balance of the purchase price of certain storage batteries and electrical equipment, furnished by plaintiff to defendant at defendant's instance and request, and to establish and foreclose a mechanic's lien upon defendant's property to the amount thereof. Defendant pleaded failure of consideration, and also a counterclaim for breach of warranty in the sale of the materials. The case was tried to the court, resulting in a judgment and decree for plaintiff, and defendant appeals.— *Affirmed.*

*Mullan & Pickett,* for appellant.

*Carr, Hewitt, Parker & Wright* and *W. N. Birdsall,* for appellee.

DEEMER, J.— The defendant owns and operates a system of electric street railways in the cities of Waterloo and Cedar Falls, an interurban line between said cities, and also an electric line to Denver Junction, in Bremer county. Defendant's power house is located in Waterloo. It has a rotary transformer for its Denver line at the station of Glasgow. It had a storage battery in Cedar Falls for several years prior to the time involved in this case. As the business of the defendant increased, it became necessary to increase its power in Cedar Falls. It had secured the business of delivering coal to the State Normal School, which is located on the outskirts of Cedar Falls on a hill. It did not have sufficient power to move the coal to the Normal during the day without interrupting its other traffic, and was compelled to haul the coal at night. The matter was taken up by Mr. Cass, president of the defendant, with the plaintiff at its office in Chicago, and the objects which the defendant desired, to-wit, sufficient power with which to haul defendant's coal cars to the Normal School, was stated. In November Mr. Osthoff, plaintiff's engineer, who had charge of such matters, came to Waterloo, and made a personal examination of defendant's plant, lines and equipment, with a view of working out a plan which would produce the results required by the defendant. In February of the year 1903, after Osthoff had been at Waterloo, and returned to the plaintiff's place of business, plaintiff wrote defendant a plan for bringing about the results desired, and making a proposition which it was hoped would be satisfactory. This proposition was in writing, and reads as follows:

Chicago Office, Marquette Building, February 19, 1903. Waterloo & Cedar Falls Rapid Transit Co., Waterloo, Iowa — Gentlemen: We propose to furnish and install two couples, consisting of two positive and two negative type F plates in each of your present 215 F-13 glass jars, in your plant at Cedar Falls, Iowa, for the sum of $4,000. This quotation includes the cleaning of the present battery by us, and also new acid for the present battery. We have assumed that there will be sufficient room to install the additional cells. All additional racks and wire or cable connections between the old and the new cells, and any changes in the present wiring which may be necessary to be furnished and done by you. All material to be first-class and of our latest type, and all work to be done in a first-class workmanlike manner and satisfactory to your company. Two thousand ($2,000) dollars or fifty per cent. (50 per cent.) to be paid us upon delivery of the material, and two thousand ($2,000) dollars or the remaining fifty per cent. (50 per cent.) when the material is installed. Respectfully submitted by the Electric Storage Battery Co., by Otto E. Osthoff, Engr. Chicago Office. Accepted. The Waterloo & Cedar Falls Rapid Transit Co., by L. S. Cass, President. Routing of shipment to be supplied by Waterloo & Cedar Falls Rapid Transit Co.

Osthoff, plaintiff's engineer, followed this to Waterloo; and it is claimed that, before the proposition was accepted, the parties entered into an oral agreement, whereby the plaintiff undertook and agreed to make such changes and install such additions to the battery of the defendant then in use in Cedar Falls, in connection with other changes in defendant's equipment and additions thereto, as would enable the defendant to operate a freight train, consisting of a twenty-three-ton locomotive and a sixty-ton trailer loaded with coal to the Normal School, at the same time defendant was operating its two twenty-one-ton cars on other parts of its line, as well as its other traffic. Defendant further contends that plaintiff, through its agent, represented and guaranteed that, if defendant carried out the plan proposed, it would produce the results desired. Defendant contends that the real con-

tract between the parties was oral, while plaintiff insists that its agreement is to be found in the proposition before referred to, which defendant accepted; that this embodies the entire agreement, and that parol evidence is not admissible to change or vary the same.

Further, it argues that, even if there was a warranty which was not complied with, defendant retained and used the goods for such a length of time, without objection or complaint, as that it should be held to have waived any defects in the property sold. Reduced to its last analysis, defendant's claim is not that there were any defects in the specific items of property furnished, but that as a whole it did not produce the results which plaintiff's engineer promised it would. The exact statement which it is claimed plaintiff made is shown by the testimony of one of defendant's witnesses, as follows: "When Mr. Osthoff came to my office in February, after I had received the written proposition and recommendations, we made up the figures as to the cost of making the changes and improvements set out in Mr. Osthoff's letter of February 19th. The figures amounted to fully the cost of installation of a rotary transformer station, and this fact was stated by me in the conversation. When Mr. Osthoff came in, I had the figures all prepared. We went over them, and I said to Mr. Osthoff: ' Now, Mr. Osthoff, this expenditure of money will install a rotary transformer station at Cedar Falls, and give us something that we absolutely know there is no question about doing our business. Now, if you know and will guarantee that this expenditure of money will produce the results that you know we must have, which you are thoroughly familiar with, we will buy this battery from you, and permit you to go ahead and install an electric battery; but, if you are not prepared to guarantee absolutely and positively that this will do the work, then we propose to throw out the battery and expend this money by putting in a rotary transformer.' Mr. Osthoff said: ' There is absolutely no question but that with the

expenditure of this money, you will have very much better results than you would obtain from a rotary transformer, and I have no hesitancy in guaranteeing to you that it will do so.'" It was upon these alleged statements that it is claimed defendant placed the order. Plaintiff denies that Osthoff made any representations or guaranties, save that he proposed a plan and made recommendations for the equipment of the plant, so as to produce the desired results. Defendant claims that the plan did not produce the desired results, that plaintiff could not make it do so, even after repeated attempts, and that the scheme was an absolute failure; the contention here being that the equipment was too small, the booster and the feeders being inadequate in size from 75 to 100 per cent.

The first question in the case is the admissibility of the parol testimony to establish the warranty pleaded by defendant. Upon no subject known to the law of evidence has

1. SALES: written contract: modification by parol.

there been more difficulty than with what is known as the "Parol Evidence Rule." The cases are not at all harmonious, and the decisions are often conflicting in the same jurisdiction. The difficulty is intensified when application of the rule is sought to be made to sales of personal property where there has been a written contract of sale. Plaintiff contends that the instrument of date February 19, 1903, heretofore set out, is a complete, unambiguous, and certain contract, and that to import therein such a warranty as defendant relies upon would be contrary to the parol evidence rule. This is the primary question in the case, and with that solved in plaintiff's favor, there is nothing further to consider. The rule, as stated by Mr. Mechem in his work on Sales, is as follows: "Where the parties have reduced to writing what appears to be a complete and certain agreement importing a legal obligation, it will in the absence of fraud, accident, or mistake be conclusively presumed that the writing contains the whole of the agreement between the parties, and parol evi-

dence of prior, contemporaneous, or subsequent conversations, representations, or statements will not be received for the purpose of adding to or varying the written instrument. If, therefore, such a writing exists between the parties, and it contains no warranty at all, no warranty can be added by parol. If it contains a warranty of some kind or to some extent, parol evidence will not be admitted to extend, enlarge, or modify that which the writing specified." Mechem on Sales, section 1254. Perhaps the leading case on this subject is *Seitz v. Brewers' Co.,* 141 U. S. 510 (12 Sup. Ct. 46, 35 L. Ed. 837). This case is very closely in point, and is a strong authority in favor of appellee. In *Mast v. Pearce,* 58 Iowa, 579, this question was before us, and during the course of the opinion the following language was used: "In Benjamin on Sales, section 621, it is said: 'Where the written sale contains no warranty, or expresses the warranty that is given by the vendor, parol evidence is inadmissible to prove the existence of a warranty in the former case, or to extend it in the latter by inference or implication.' And in Parsons on Contracts, vol. 1, 589, the author says: 'And where the contract of sale is in writing, and contains no warranty, then parol evidence is not admissible to add a warranty.' The learned authors cite a number of authorities in support of the rule. Such of these as we have examined fully sustain the proposition. Indeed, we feel quite sure no authority can be found holding a contrary doctrine. The rule rests upon the familiar principle that the writing is supposed to contain all the contract, and that it cannot be added to or varied by parol evidence. It will be understood that there is no fraud, accident, or mistake averred in the answer in this case, and that the written contract amounts to a contract of sale. It is not an instrument merely intended as a receipt or as an acknowledgment of the payment of the price or the like. It seems that in such cases parol evidence is not admissible to show a warranty. Parsons on Contracts, vol. 1, 589. We think the court should have ex-

cluded the evidence as to parol warranty, and should have instructed the jury that the parties were bound by the terms of the written contract." See, also, *Nichols v. Wyman,* 71 Iowa, 160; *Warbasse v. Card,* 74 Iowa, 310.

A case very like the one now before us is *Western Electric Co. v. Baerthel,* 127 Iowa, 467, which seems to be the latest pronouncement of this court upon the subject. There, as here, there was a purchase of electrical apparatus, and a guaranty or warranty as to some of the items thereof. Defendant attempted to show a parol warranty to the effect that the plant would be sufficient to light the hotel and run the elevators therein, but, upon the authority of *Mast's* case, *supra,* he was not permitted to do so. That case seems to be conclusive of the question now before us. None of the cases cited for appellant run counter to the views here expressed. *Peterson v. Railroad,* 80 Iowa, 92, has reference to a railway ticket which was held to be a memorandum or receipt, subject to parol explanation. *Keen v. Beckman,* 66 Iowa, 672, involved a receipt given by defendants to plaintiff which, as is well known, does not as a rule come with the principles we are now discussing. *Fawkner v. Smith Paper Co.,* 88 Iowa, 173, is really an authority for appellee, as parol evidence was rejected in that case. The Supreme Court of Minnesota has adopted the view taken by this court, and in *Thompson v. Libbey,* 34 Minn. 374 (26 N. W. 1), held that parol evidence of a warranty, where there is a written contract of sale, is inadmissible. Following the cases heretofore cited, it is manifest that the testimony offered by defendant as to the parol warranty should be rejected. This being true, defendants have presented no defense to plaintiff's cause of action.

Moreover, even if such testimony were admissible, we should not feel like disturbing the decree of the trial court. There is nothing in the correspondence antedating the contract which indicates that a guaranty such as is now claimed, was intended

2. SAME: warranties: evidence.

by either party, and it was not for a long time after the installation of the equipment that defendant said anything about a guaranty. Plaintiff's engineer was undoubtedly called upon to make plans for the improvement, and there is no doubt that he thought, believed, and so stated that, if his recommendations were followed, the items which he planned would do the work. Defendant did not demand any other guaranty when they made the contract than was expressed therein, and made no complaints as to any breach of warranty until pressed many times for the payment of its bill. Plaintiff gave instructions as to the use of the apparatus after it was installed, but these were not followed by the defendant.

Again, it appears that defendant accepted and used the equipment furnished by plaintiff for many months, without criticism or complaint, and did not refer to or seemingly rely upon the alleged warranty until plaintiff commenced proceedings to enforce its claim. This in itself would be a sufficient answer to defendant's defense. *Mackey v. Swartz,* 60 Iowa, 710; *Allison v. Vaughan,* 40 Iowa, 421.

3. Same: breach of warranty.

An examination of the entire record convinces us that the decree is correct, and it is *affirmed.*